**Mattie Ruth FLOYD, As Administratrix of the Estate of Jason L.C. Floyd, Deceased, Appellant,**

v.

**Marty GARRISON, Appellee.**

**No. 92–3130EA.**

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1993.

Decided June 28, 1993.

---

John Wesley Hall, Jr., Little Rock, AR, argued (John Wesley Hall, Jr. and Craig Lambert, on the brief), for appellant.

Thomas M. Carpenter, Little Rock, AR, argued, for appellee.

Before FAGG and MAGILL, Circuit Judges, and STUART,* Senior District Judge.

* The HONORABLE WILLIAM C. STUART, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

FAGG, Circuit Judge.

Mattie Ruth Floyd, a black, brought this civil rights action alleging officer Marty Garrison, a white, used unreasonable and unlawful deadly force by shooting and killing Jason L.C. Floyd. Floyd moved to dissolve the jury pool before trial, and moved for a new trial after the jury returned a verdict for Garrison, because only one of the forty prospective jurors was black. The district court denied the motions. Floyd appeals contending the use of voter registration lists as the sole source for selecting jury pools violates the fair-cross-section requirement of the Jury Selection and Service Act of 1968 (Act) and the Fifth Amendment guarantee of equal protection. We affirm.

■ The Act requires that jury pools be chosen at random from a fair cross section of the community. 28 U.S.C. § 1861 (1988). To establish a prima facie violation of the fair-cross-section requirement, Floyd must show: (1) blacks are a distinctive group in the community; (2) the representation of blacks in jury pools is not "fair and reasonable in relation to the number of [blacks] in the community;" and (3) "this underrepresentation is due to systematic exclusion of [blacks] in the jury-selection process." *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979) (Sixth Amendment fair-cross-section requirement); *see United States v. Clifford*, 640 F.2d 150, 154–55 (8th Cir.1981) (*Duren* elements apply to § 1861).

■ Floyd has failed to establish the third prong of the fair-cross-section test by showing underrepresentation of blacks in jury pools is inherent in the jury-selection process. *Id.* at 366, 99 S.Ct. at 669. Floyd merely asserts the use of voter registration lists as the sole source for selecting jury pools does not provide a fair cross section of the community because blacks do not register to vote in the same proportion as other persons. We have consistently approved the use of voter registration lists to select jury pools. *See, e.g., United States v. Garcia*, 991 F.2d 489, 492 (8th Cir.1993). The use of voter registration lists is required by the Act and was designed to give qualified citizens an equal chance to be selected for jury pools.

*See Clifford*, 640 F.2d at 156. Even if proportionally fewer blacks register to vote, "[t]he mere fact that one identifiable group of individuals votes in a lower proportion than the rest of the population does not make a jury selection system illegal or unconstitutional." *Id.* Absent proof that obstacles are placed in the path of blacks attempting to register to vote, voter registration lists may be used as the sole source for selecting jury pools. *Id.; United States v. Freeman*, 514 F.2d 171, 173 (8th Cir.1975).

■ The Fifth Amendment guarantee of equal protection requires that the procedures used to select jury pools be racially nondiscriminatory. *See United States v. Greene*, No. 92–3052, 1993 WL 101848, at *1 (8th Cir. Apr. 8, 1993). To establish a prima facie equal protection violation, Floyd must show (1) blacks are "a recognizable, distinct class, singled out for different treatment;" (2) blacks were substantially underrepresented in jury pools over a significant period of time; and (3) the jury-selection process is "susceptible of abuse or is not racially neutral." *Castaneda v. Partida*, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977).

■ Floyd has failed to establish the third prong of the equal protection test by showing a discriminatory purpose in the jury-selection process. *Id.* at 494–95, 97 S.Ct. at 1280; *see Duren*, 439 U.S. at 368 n. 26, 99 S.Ct. at 670 n. 26. Floyd concedes there was no intentional discrimination in the random selection of jurors from the voter registration lists, but again contends proportionately fewer blacks register to vote. The use of voter registration lists was intended to eliminate discriminatory and arbitrary selection practices, and Floyd has not shown that blacks are prevented from registering to vote. *United States v. Hanson*, 472 F.Supp. 1049, 1055 (D.Minn. 1979), *aff'd*, 618 F.2d 1261 (8th Cir.), *cert. denied*, 449 U.S. 854, 101 S.Ct. 148, 66 L.Ed.2d 67 (1980). Thus, the sole use of voter registration lists to select jury pools does not violate equal protection.

Even if Floyd had established the third prongs of the fair-cross-section and equal protection tests, Floyd failed to show blacks were substantially underrepresented on jury

950

pools. Over a thirteen month period, 10.-335% of the jurors called for service in the Western Division of the Eastern District of Arkansas were blacks, and 13.8% of the general population in that Division were blacks. The absolute disparity between blacks on jury pools and blacks in the general population was less than 4% (13.8%–10.335%). This underrepresentation is not substantial and does not constitute evidence of a fair-cross-section violation. *Clifford,* 640 F.2d at 155 (absolute disparity of 7.2% is not substantial underrepresentation). The disparity also is not significant enough to prove purposeful discrimination against blacks. *Swain v. Alabama,* 380 U.S. 202, 208–09, 85 S.Ct. 824, 829–30, 13 L.Ed.2d 759 (1965) (purposeful discrimination not shown by an absolute disparity of 10%), *overruled on other grounds by Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Although Floyd contends we should apply a comparative disparity analysis, we decline to adopt that concept as a better means of calculating underrepresentation. *See Clifford,* 640 F.2d at 155 (relying on absolute disparity in a fair-cross-section case); *Castaneda,* 430 U.S. at 495–96, 97 S.Ct. at 1280–81 (relying on absolute disparity in an equal protection case).

We affirm the district court's rulings.