35 F.3d 566
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sang MULLINS, Plaintiff-Appellant,
v.
FAST MOTOR SERVICE, INC., a corporation, and Samuel E.
Clark, Defendants-Appellees.
 No. 92-2428.
 United States Court of Appeals, Sixth Circuit.
 Aug. 31, 1994.
 
 Before: MARTIN and SUHRHEINRICH, Circuit Judges; JORDAN, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff filed a personal injury action after her van collided with a tractor trailer owned by defendant Fast Motor Service and driven by defendant Samuel E. Clark. Pursuant to the parties' consent, this matter was tried before a magistrate judge. After the jury returned a verdict for defendants, plaintiff moved for an order vacating the judgment. The district court denied the motion, and plaintiff filed this appeal, challenging the jury selection process, several evidentiary rulings and the jury deliberation process.
 
 
 2
 We AFFIRM.
 
 I.
 
 3
 Plaintiff claims that the underrepresentation of minorities on the jury panel and a time limitation imposed on her voir dire rendered the jury selection process defective. We disagree.
 
 A. Jury Array
 
 4
 The jury panel, convened on June 22, 1992, consisted of twenty-two veniremen, including one African-American and one Hispanic-American. Plaintiff contends that the population of Kalamazoo is 15.5 percent black and includes 2000 Koreans. Therefore, plaintiff concludes, the jury panel was not representative of the population of these minorities in the community.
 
 
 5
 Jury pools must be chosen at random from a fair cross-section of the community. 28 U.S.C. Sec. 1861. To lodge an objection to the jury selection process, a plaintiff must follow the statutory requirement established in Title 28 U.S.C. Sec. 1867.[1] Plaintiff failed to comply with those requirements.
 
 
 6
 Upon review of the trial transcript, we find that plaintiff failed to object to the composition at the time the parties selected the jury. In fact, plaintiff never objected until August 10, 1992, twenty days after voir dire and eleven days after the verdict. The statute requires that an objection be made "before voir dire begins" or within seven days of discovery or seven days after the problem could have been discovered through diligence. 28 U.S.C. Sec. 1867(c). Plaintiff's motion fails to allege her diligence in getting the information she needed to raise an objection. 28 U.S.C. Sec. 1867(c). She merely asserts that she could not object until August 5, 1992, because until that date she did not know how many African-Americans lived in Kalamazoo or how many Koreans lived there. Further, plaintiff presents no sworn statement of facts "which, if true, would constitute a substantial failure to comply with the provisions of this title ..." 28 U.S.C. Sec. 1867(d). This objection does not comply with the statutory procedure. The population in Kalamazoo lacks probative value as a basis for objecting to the jury array because the selection area for jury panels in the district court includes seven counties in southwestern Michigan. Moreover, plaintiff does not allege that the underrepresentation is due to systematic exclusion of blacks and Koreans in the jury selection process, an element of a fair cross section claim. 28 U.S.C. Sec. 1861; Floyd v. Garrison, 996 F.2d 947 (8th Cir.1993) (citing Duren v. Missouri, 439 U.S. 357, 364 (1979)).
 
 
 7
 Because the procedures in Sec. 1867 are the "exclusive means" through which plaintiff may challenge the jury, 18 U.S.C. Sec. 1867(e), her failure to make an objection as prescribed under the statute precludes consideration of this issue on appeal.
 
 B. Voir Dire
 
 8
 As to her second claim, plaintiff asserts she had an inadequate amount of time to question the jury panel. After plaintiff's counsel's lengthy examination of three potential jurors, the trial court, in a side bar conference, indicated that counsel should complete his questioning in forty-five minutes. Plaintiff, concerned with anti-Asian bias, contends that this time limitation prejudiced her ability to select a jury.
 
 
 9
 The trial court's discretion in conducting voir dire will not be disturbed absent a finding that the voir dire was insufficient to properly ascertain the qualifications of the prospective jurors. United States v. Licavoli, 725 F.2d 1040, 1052 (6th Cir.), cert. denied, 467 U.S. 1252 (1984). We make no such finding.
 
 
 10
 Plaintiff's counsel did not object at trial to any limitation placed on the length of his examination of the prospective jurors. Plaintiff's failure to raise an objection at the time voir dire took place precludes raising such an objection on appeal. Hicks v. Nickelson, 835 F.2d 721, 724-25 (8th Cir.1987). Moreover, counsel did not use all of the allotted time to examine the prospective jurors. Consequently, the facts do not substantiate her claim.
 
 
 11
 In addition to the issue regarding the sufficiency of time to conduct voir dire, the assistant to plaintiff's counsel asserts in a sworn affidavit that at the conclusion of the sidebar conference discussing limits on the length of time to voir dire the potential jurors, the magistrate judge stated to plaintiff's counsel, "You're going to be embarrassed." Plaintiff assumes that the jury overheard this comment and further contends that this comment prejudiced her.
 
 
 12
 Here, the parties dispute whether the comment was made. Even if we assume the comment was made, and that the jury heard the comment, the discussion about the presumption is merely academic because this single, isolated incident does not rise to the level of reversible error. Accordingly, we find no prejudicial error occurred during the jury selection process and turn to plaintiff's claims that she was unduly prejudiced by the district court's evidentiary rulings.
 
 II.
 
 13
 Plaintiff challenges several evidentiary rulings. Again, plaintiff's arguments fail to persuade the court that reversible error occurred.
 
 A. Speeding Tickets
 
 14
 First, plaintiff argues that the trial court erred in prohibiting her counsel from questioning Clark about his driving record. Plaintiff contends that she should have been allowed to delve into these speeding tickets during trial as evidence of habit, admissible under Fed.R.Evid. 406.
 
 That rule provides as follows:
 
 15
 Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.
 
 
 16
 Fed.R.Evid. 406.
 
 
 17
 Prior to trial, defendants moved in limine for an order prohibiting plaintiff from questioning Clark about prior traffic tickets. The court held an evidentiary hearing on this motion in which Clark admitted that he had received approximately thirty-eight speeding tickets during the ten years prior to trial. Although six of the years were pre-accident, plaintiff never established how many tickets Clark received before the accident as opposed to after the accident. Nor did plaintiff establish exactly how many tickets Clark received. Clark testified that he drove 150,000 to 175,000 miles each year. Clark denied speeding at the time of the accident.
 
 
 18
 The magistrate judge considered the number of incidents involving speeding in contrast to the number of instances which did not involve speeding. He concluded that the evidence was insufficient to support a finding that Clark had a habit of speeding; that is, that Clark regularly and automatically drove in excess of the speed limit. We find no error.
 
 B. Employment Record
 
 19
 Additionally, plaintiff contends that counsel should have been permitted to question Clark about his employment record. Specifically, plaintiff attempted to question Clark about his driving infractions to show that his employment was terminated because of poor driving, despite Clark's testimony that he was terminated because of a difference of opinion with his employer, thereby impeaching Clark's credibility.
 
 
 20
 The trial court prohibited this line of questioning because of its previous ruling that Clark's traffic tickets were irrelevant. Clark's employment problems do not make it more probable that he had a habit of speeding. Consequently, the court held that this line of questioning involved impeachment on a collateral matter.
 
 
 21
 Courts do not permit impeachment by extrinsic evidence of a witness on a collateral matter. United States v. Markarian, 967 F.2d 1098, 1102 (6th Cir.1992), cert. denied, 113 S.Ct. 1344 (1993). Because we have affirmed the district court's ruling on the admissibility of the tickets, we do not find the district court abused its discretion in ruling that Clark's employment record was inadmissible impeachment evidence.
 
 C. Police Report
 
 22
 Plaintiff contends the district court's admission of the police report of the accident constituted reversible error. Plaintiff stipulated to the admissibility of the police accident report in the pretrial order, however, prior to trial, plaintiff notified the court that she would not offer the report.
 
 
 23
 An accident report may be admissible pursuant to Fed.R.Evid. 803(8)(C), because the rule authorizes the admission of "records, reports, statements, or data compilations, in any form ... (C) in civil actions ... resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." See Baker v. Elcona Homes Corp., 588 F.2d 551, 556 (6th Cir.1978), cert. denied, 441 U.S. 933 (1979). To determine whether a report is trustworthy, the court considers such factors as timeliness of the investigation, qualifications of the investigating officer, corroboration, and motivation of witnesses. See Faries v. Atlas Truck Body Mfg. Co., 797 F.2d 619 (8th Cir.1986).
 
 
 24
 The police officer that completed the report stated that he relied on the comments of the truck driver, Clark, and two disinterested witnesses as well as his independent observation of physical debris on the road and skid marks to complete his report. The officer corroborated Clark's statement to the extent possible. The trial court did not abuse its discretion in admitting the report.
 
 
 25
 Finally, plaintiff contends that after the court admitted the report, it again erred when it refused to allow plaintiff's counsel to comment on the report in his summation. The police report stated that Clark was self-insured and plaintiff contends that the jury was left with the mistaken belief that defendant was uninsured. Plaintiff wanted to correct this misconception in his closing argument. The plaintiff believes that this misconception prejudiced her and requests a new trial.
 
 
 26
 The facts do not support a finding that error occurred. Plaintiff never requested that the self-insured comment on the police report be redacted. The trial court properly instructed the jury that the existence of insurance is irrelevant. Fed.R.Evid. 411. Although plaintiff speculates that the jury did not want the uninsured driver to pay money to a Korean resident alien, we presume that the jury followed the court's instructions. Plaintiff has provided no basis to rebut this presumption.
 
 
 27
 Accordingly, we find the trial court correctly prohibited plaintiff from mentioning the existence of insurance in his final argument.
 
 III.
 
 28
 The last issue presented concerns the court's contact with the jury during its deliberation. During deliberation, the jury sent a note to the magistrate judge, requesting "photos of the accident." A second note advised the court that the jury was through for the day. The magistrate judge did not advise counsel of either note and neither was entered into the record. Their existence was revealed to plaintiff in the court's opinion denying plaintiff's request for a new trial. Plaintiff contends that she is entitled to a new trial because the trial court failed to follow proper procedure in dealing with these written jury requests.
 
 
 29
 "It is settled law that messages from a jury should be disclosed to counsel and that counsel should be afforded an opportunity to be heard before the trial judge responds." United States v. Ronder, 639 F.2d 931, 934 (2d Cir.1981) (citing Rogers v. United States, 422 U.S. 35, 39 (1975)). There is no dispute that this practice was not followed. Nevertheless, not every procedural error requires a new trial.
 
 
 30
 Courts distinguish substantive communications between the court and jury such as supplemental jury instructions, and administrative acts of the trial court such as furnishing exhibits upon jury request. United States v. Osterbrock, 891 F.2d 1216 (6th Cir.1989), cert. denied, 113 S.Ct. 1273 (1993). Here, the transmittal of exhibits to the jury without notifying counsel is properly characterized as an administrative task, a matter within the discretion of the trial court. United States v. DeHernandez, 745 F.2d 1305 (10th Cir.1984).
 
 
 31
 Plaintiff argues that the first note and the court's response to that note should be characterized as a substantive communication. According to plaintiff, the court, in sending only exhibits 1-14 into the jury room, implied that exhibit 15 was untrustworthy. Exhibit 15 was a photo montage of aerial survey shots of the accident referred to during the trial as the "map" or the "aerial photographs." The photos were taken in 1984 for the Berrien County Planning Commission. Accordingly, plaintiff concludes that the trial court interpreted the note and furnished only those exhibits it believed the jury requested, both acts properly characterized as substantive communication.
 
 
 32
 We disagree with plaintiff's characterization of the court's actions. First, the trial court instructed the jury that if it wanted any exhibits, it should ask for them. Plaintiff did not object to this instruction. Secondly, the exhibits given to the jury were plaintiff's and it is difficult to ascertain how plaintiff could be prejudiced by the court's action in allowing them into the jury deliberation room. Finally, if the jury had wanted to see Exhibit 15, it could have asked for that exhibit. The jury had spent six of the seven trial days looking at the exhibit, and certainly knew of its existence. "Ex parte communication with the jury will not require reversal where substantive rights of parties have not been adversely affected." Miller v. American President Lines, Ltd., 989 F.2d 1450, 1467 (6th Cir.) (citing Petrycki v. Youngstown & Northern Ry. Co., 531 F.2d 1363, 1367 (6th Cir.1976)), cert denied, 114 S.Ct. 304 (1993). We conclude that plaintiff's substantive rights were not adversely affected by the trial court's conduct.
 
 
 33
 Based on the foregoing discuss, we AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 The statute provides in part:
 (c) In civil cases, before the voir dire examination begins, or within seven days after the party discovered or could have discovered, by the exercise of diligence, the ground therefor, whichever is earlier, any party may move to stay the proceedings on the ground of substantial failure to comply with the provisions of this title in selecting the petit jury.
 (d) Upon motion filed under subsection (a), (b), or (c) of this section, containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title, the moving party shall be entitled to present in support of such motion the testimony of the jury commission or clerk, if available, any relevant records and papers not public or otherwise available used by the jury commissioner or clerk, and any other relevant evidence....
 (e) The procedures prescribed by this section shall be the exclusive means by which ... a party in a civil case may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title....
 28 U.S.C. Sec. 1867.